UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| YOLANDA YOUNG-SMITH, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Cause No. 3:07 CV 629 |
| BAYER HEALTH CARE, LLC, et al., | ) ) ) | |
| Defendants. | ) ) | |

## OPINION AND ORDER

Presently before the Court is Defendant United Steelworkers Local 12273's ("the Union's") "Motion in Limine Regarding the Scope of Damages" [DE 108] filed on September 20, 2011. Plaintiff, Yolanda Young-Smith ("Young-Smith") responded on October 18, 2011 [DE 109] to which the Union replied on November 1, 2011 [DE 112]. Thereafter, the parties sought leave to file a sur-response [DE 115] and sur-reply [DE 116] and briefing was complete on November 28, 2011. For the following reasons, the Defendant's Motion in Limine will be GRANTED in PART and DENIED in PART.

## Applicable Standard

"A motion in limine is a request for guidance by the court regarding an evidentiary question." *Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir.1999) (citation omitted). "Federal district courts have the power to exclude evidence *in limine* pursuant to their authority to manage trials." *Dartey v. Ford Motor Co.,* 104 F.Supp.2d 1017, 1020 (N.D.Ind.2000) (citation omitted). "[A]s the term 'in limine' suggests, a court's decision on such evidence is preliminary in nature and subject to change." *Id.; see United States v. Connelly,* 874 F.2d 412, 416 (7th Cir.1989) (emphasizing that

1

an order either granting or denying a motion in limine is "a preliminary decision ... subject to change based upon the court's exposure to the evidence at trial"). Indeed, the Seventh Circuit Court of Appeals has noted that "a ruling [in limine] is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the proffer." *Connelly,* 874 F.2d at 416 ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling."). Thus, a ruling on a motion in limine is not necessarily the final determination on the admissibility of the evidence discussed in the motion. *See Wilson,* 182 F.3d at 570-71. Instead, an order on a motion in limine is essentially an advisory opinion, "merely speculative in effect." *Id.* (citing *Luce v. United States,* 469 U.S. 38, 41, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984)).

**Background**

Young-Smith is a black female and a former employee of Defendant Bayer Health Care, LLC ("Bayer"). After her discharge from Bayer, Young-Smith sued both Bayer and the Union contending that her discharge by Bayer violated Title VII and that the Union discriminated against her on the basis of race in several ways. On January 2, 2010, Young-Smith dismissed her claims against Bayer. Thus, the claims against the Union are the sole claims remaining in this case.

With respect to the Union, Young-Smith alleges two distinct claims. First, she argues that the manner in which the Union pursued her grievance relating to the discharge was discriminatory thereby violating the terms of the Collective Bargaining Agreement. Second, she argues that the Union engaged in a policy or practice of refusing to file race-based grievances on behalf of employees when asked to do so. *See Goodman v. Lukens Steel Co.,* 482 U.S. 656 (1987) (finding Union in violation of section 1981 when it violates the CBA by refusing to file race-based

2

grievances).

On March 3, 2011, the undersigned granted, in part, and denied, in part, the Union's Motion for Summary Judgment on these claims. More specifically, the Court held that on the basis of the record presented "no reasonable jury could conclude that the Union discriminated against Young-Smith in the manner in which it processed her grievance [related to her discharge]." [DE 94, p. 20]. However, the Court also concluded that Young-Smith had "established a genuine issue of material fact related to her contention that the Union failed to process her grievance requests based upon race discrimination." [DE 94, at p. 25].[1] Based upon these conclusions, the Union now seeks a ruling *in limine* precluding Young-Smith from recovering damages from the Union related to her discharge. It is to this assertion that the court now directs its attention.

## **DISCUSSION**

In support of its motion, the Union asserts that based upon the undersigned's summary judgment rulings, Young-Smith's economic damages are limited to any loss of pay she suffered as a result of the alleged failure to file race discrimination grievances on her behalf.[2] This does not extend, the Union asserts, to any claim for economic damages such as back pay relating to her discharge since this Court has previously concluded that the Union did not discriminate against Young-Smith in the processing of her discharge grievance.

In response, Young-Smith asserts that *if* the Union had filed race discrimination grievances prior to her discharge when she had asked, she might have avoided discharge. Thus, she asserts the jury is entitled to weigh whether she lost an opportunity to retain her employment thereby entitling

---

[1]Young-Smith also attempted to raise a disparate impact claim but summary judgment was granted as to that claim as well.

[2]The Union claims her lost pay unrelated to her discharge is $50.

3

her to backpay . Likewise, she asserts that she is entitled to all the damages that are the natural and probable consequence of the Union's conduct, including emotional distress damages and punitive damages.

Young-Smith's remaining claim against the Union sounds under 42 U.S.C. § 1981, which provides that "[a]ll persons within the jurisdiction shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981(a). For section 1981(a) purposes, "the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Thus, she asserts that the Union has discriminated against her in the manner in which it performs its contract by refusing to file race-based grievances on behalf of black employees and that she, in particular, has requested the Union to file such grievances on her behalf only to be refused at every turn. *See Goodman,* 482 U.S. 656 (holding union liable under section 1981 for following a deliberate policy of never including claims of racial discrimination in its grievances while pursuing thousands of other grievances).

In pursuing her section 1981 claim, the undersigned concluded in the summary judgment determination that Young-Smith created a genuine issue of fact with evidence that she specifically requested the Union to file certain race-based grievances and it refused.[3] The court also noted that

---

[3]There are several formulations as to the proof required for the type of claim pursued here. For instance, the Seventh Circuit, in a non-union context has noted that to prevail on a § 1981 claim a plaintiff must prove: (1) she is a member of a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerned at least one of the activities enumerated in the statute, such as making a contract. *See Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756 (7th Cir.2006); *Morris v. Office Max, Inc.,* 89 F.3d 411, 413 (7th Cir.1996). Other times, the Seventh Circuit has used a more union-specific formula. *See Greenslade v. Chicago Sun–Times,* 112 F.3d 853, 866 (7th Cir.1997) (holding that to establish a claim against the Union, the plaintiff must show (1) the employer violated the collective bargaining agreement between the union and the employer ; (2) the union breached its own duty of fair representation by letting the breach go unrepaired; and (3) that some evidence indicates

while the establishment of a discriminatory pattern, practice, or policy by the Union is the typical way in which a plaintiff establishes discriminatory intent, at least one court has held that proof of a single act of discrimination by the Union, i.e., a deliberate choice by a union not to process a race-based grievance may give rise to a claim against it. *See Hubbell v. World Kitchen, LLC.,* 717 F.Supp.2d 494, 502 (W.D. Pa., 2010). Thus, this Court concluded that Young-Smith's testimony that she asked specific Union members to file a race-based grievance on her behalf and the request was refused was sufficient to permit a jury to hear her claim.[4]

Section 1981 permits a plaintiff to recover compensatory damages resulting from the discriminatory conduct. A plaintiff may recover emotional damages as a result of a violation and punitive damages are available when a plaintiff demonstrates that the defendant engaged in intentional discrimination "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1); *E.E.O.C. v. Management Hospitality of Racine, Inc.* 2012 WL 37112, 12 (7th Cir. 2012)

Here, plaintiff argues she is entitled to lost pay, emotional distress damages, and punitive damages for the Union's refusal to address her race-based concerns through the grievance process in 2004-2005, and in 2006 prior to her discharge. As part of her argument, she asserts that if the jury finds discrimination by the Union she is entitled to damages related to her "lost chance" of continued employment had her race-based arguments been successful during the arbitration in avoiding her discharge. Young-Smith further argues that she should be entitled to present any and all evidence,

---

discriminatory animus motivated the union.) Under either analysis, deliberate or purposeful discrimination is a requirement to prevail.

[4]The Union contends Young-Smith never requested that it file a race-based grievance at any time and thus, she cannot establish her claim. It is for this reason, that the undersigned determined a credibility and factual issue precluded summary judgment on this claim.

dating back as far as 2000, that she asked the Union to file race-based grievances and it refused so as to establish her *Goodman* claim.

As noted above, this Court has already held as a matter of law that the Union did not discriminate against Young-Smith in the manner in which it conducted itself during her discharge arbitration. The Union offered legitimate non-discriminatory reasons for its actions at the discharge arbitration and the undersigned concluded that Young-Smith "presented no evidence to rebut the legitimate non-discriminatory reasons proffered by the Union for its actions." [DE 94 at p. 20]. The Union did, in fact, argue that Bayer utilized different standards in assessing the discipline, i.e., the termination, to be doled out to both the plaintiff and the other individual involved in the incident leading to her discharge, although it stopped short of alleging racial discrimination in part, because it asserted that it would have had a higher burden of proof under the terms of the CBA. The differential treatment argument failed at the arbitration and the arbitrator upheld Young-Smith's termination based on her inappropriate workplace conduct.[5] After reviewing the evidence favorably to Young-Smith in the summary judgment process, the undersigned held that Young-Smith failed to present sufficient evidence to withstand summary judgment as to whether the Union discriminated against her in violation of §1981 when it represented her in the discharge arbitration. Young-Smith now claims that had the Union argued that Bayer engages in discriminatory practices in the workplace, as she pleaded with the Union to do, her termination may not have been upheld by the arbitrator. She further contends that the "Union's refusal to include race discrimination in her discharge grievance deprived her of the chance to have her discharge overturned as racially

---

[5]The arbitrator concluded that Young-Smith "had repeatedly continued to fuel a controversy with two other employees, significantly burdening the workplace with private issues, long after she had been ordered not to do so" and "to the best of management's knowledge, the other two employees had stopped disrupting the workplace with private issues."

discriminatory through the grievance process." (Pltf. Response, p. 6).

The lost chance doctrine has been recognized in this circuit in discriminatory promotion cases, *Alexander v. City of Milwaukee,* 474 F.3d 437, 449 (7th Cir. 2007), to quantify a plaintiff's monetary loss when what they in fact lost was a chance to compete on fair footing in the promotion process due to a discriminatory act. Under this theory, a plaintiff must demonstrate, using comparative and actual evidence, that he or she was better suited than their rivals to have received the promotion absent discrimination. *Id.* 474 F.3d at 450-451. Here, Young-Smith seeks to have the doctrine extended to the facts of this case so as to permit the jury to evaluate her lost chances of success at the discharge arbitration had the Union pursued a claim of race discrimination.

As set out above, this court has foreclosed Young-Smith's discrimination claim against the Union related to its conduct during her discharge arbitration. Yet, what Young-Smith seeks to do by virtue of the lost chance doctrine is to resurrect that claim by putting her discharge (and the issue of backpay) before the jury. In essence, she seeks to have the jury speculate on the "possibility" that her discharge by Bayer was discriminatory and the Union's failure to file race based grievances in the past influenced Bayer's discriminatory behavior. This is an attempt to make an end run around this Court's summary judgment ruling and, as such, is foreclosed.

Moreover, even if the Court opted not to foreclose the argument based on its previous ruling, the lost chance doctrine is simply unavailable to Young-Smith based upon the facts of this case. Every case applying the lost chance doctrine in the Seventh Circuit has done so from the perspective of a discriminatory promotion type claim. *See Doll v. Brown,* 75 F.3d 1200, 1206-1207 (7th Cir. 1996) (stating that the lost chance doctrine "strikes us as peculiarly appropriate in employment cases involving competitive promotion."); *Bishop v. Gainer*, 272 F.3d 1009, 1016 (7th Cir.2001)

7

(permitting calculation of plaintiffs' damages by assessing what the chances were that each would have received the promotion the sought absent discrimination); *Biondo v. City of Chicago,* 382 F.3d 680, 689-690 (7th Cir. 2001) (applying doctrine to firefighters who lost a chance at promotion because of the employer's rational discrimination); *Murray v. Village of Hazel Crest,* 2011 WL 382694, 5 (N.D.Ill. 2011) (concluding plaintiffs could not succeed on lost chance in promotion discrimination case where they had not pointed to evidence that they had any significant chance of being the one actually selected even absent employer's discrimination). Indeed, in these cases the plaintiffs recovery is assessed from the perspective that they were the better qualified candidate and the discrimination *by the employer*, robbed them of the chance for promotion. Thus, all of these cases require some identifiable proof from the plaintiff that they would have been the likely choice for the promotion but for the discrimination.

Having reviewed the above cases, the court concludes the lost chance doctrine is inapplicable to the facts of the present case. To allow Young-Smith to argue that she is entitled to backpay for her discharge would essentially turn her claim that the Union discriminated against black union members by refusing to file race based grievances into a discharge case. Moreover, under the precedent above, Young-Smith would have to present evidence so that the jury could assess the probability that she would have retained her employment had the Union not only argued race-based discrimination by the employer but successfully argued it. This is not something that can be easily confined to calculation as it can in promotion or hiring type cases where there are often entrance tests, performance tests, performance reviews, etc. which provide some indication to the jury that the plaintiff would have received the promotion absent discrimination. *See Alexander*, 474 F.3d at 450 (noting that the 7th Circuit cases have evaluated the lost chance doctrine in situations in which

8

the administration of exams and other identifiable benchmarks have resulted in a more definite and certain list of promotees so as to evaluate the plaintiff's probability of success). And, Young-Smith has no evidence to support her probablility of success. In fact, Young-Smith does not deny engaging in the underlying conduct that led to her discharge by her employer nor does she argue that discharge was not warranted for the conduct. She simply asserts that **maybe** she **could have** avoided discharge **if** the Union asserted race discrimination on her behalf. This requires multiple levels of speculation by the jury and does nothing to achieve the goal of the loss chance doctrine, which is to make the plaintiff whole for an identifiable loss due to discrimination.

At trial, the jury will be instructed that it is to award damages for the Union's conduct only if it finds from a preponderance of the evidence that the Union's conduct caused damage to the plaintiff. Plaintiff, for instance, may be entitled to emotional distress damages from the Union if she prevails on her contention that the Union refused to process claims of race discrimination *throughout her employment*. Simply put, the Union can be held liable for the damages it may have caused to Young-Smith, emotional or otherwise, occasioned by its refusal to address her race-based discrimination claims throughout her employment at Bayer. Young-Smith cannot recover back pay for her discharge from the Union. Thus, the Union's Motion in Limine is GRANTED as to Young-Smith's claim for "lost chance" damages or for back pay due to her discharge.

Young-Smith is entitled, however, to argue to the jury that the Union's conduct created other damages for which she may be compensated, such as emotional distress damages and punitive damages. As Young-Smith has presented it, she has a long history of requesting the Union to pursue claims of race discrimination by Bayer that resulted in some adverse action (short of discharge) to her. Young-Smith may certainly argue that the Union's constant and continuous refusal to file race-

9

based grievances against Bayer to remedy discrimination suffered by its members resulted in emotional distress to her. Likewise, to the extent she can prove that the Union's failure to file race-based grievances was intentional discrimination with malice or with reckless indifference to her federally protected rights she may seek a punitive damages instruction.

In her briefs, Young-Smith raises a second issue as to which requests she made to the Union to file a race based grievance she is permitted to present to the jury. In this court's summary judgment order, the undersigned specifically refused to consider vague allegations by Young-Smith that she requested the Union to file race discrimination grievances on her behalf in early 2000 through 2004. Specifically, the undersigned held:

> To say that the record is vague on the specifics of these requests is an understatement. In fact, the record is barren of any reliable evidence as to when some of these instances occurred, what allegedly discriminatory act spawned them and to whom [Young-Smith] complained...This Court has carefully reviewed the plaintiff's testimony and agrees that there is insufficient reliability to her statements to permit them as a basis for holding the Union liable on this type of claim. Moreover, since Young-Smith, as demonstrated below, has other incidents that are more specific upon which she can rely to support her claim, these vague assertions are irrelevant to her claim. As a result, the Court GRANTS the Union's Supplemental Motion for Summary Judgment and will not consider the incidents occurring prior to 2004.

DE 94, pp. 22-23. Given the above ruling, this Court has already determined that Young-Smith may not present any evidence of incidents occurring prior to 2004 in which she contends that she requested the Union to file race-based grievances on her behalf and it refused. Thus, to the extent, that the Union's Motion in Limine seeks to prohibit Young-Smith from presenting testimony or evidence of requests she asserts she made for the Union to file race-based grievances prior to 2004, the Motion in Limine is GRANTED.

However, the undersigned DENIES the Motion in Limine to the extent that Young-Smith

seeks to argue that she requested that the Union file a race-based grievance relating to her discharge and it refused to pursue this avenue of relief. Young-Smith may present this evidence to establish the Union's practice of not raising race-based issues of its members when requested to do so. As was noted in the summary judgment opinion, there was insufficient evidence to establish that the Union's handling of the discharge arbitration as a whole was discriminatory. But, the record is clear that Young-Smith asked the Union to file a race-based grievance and it declined to do so. This evidence is relevant <u>solely</u> to aid Young-Smith in establishing that the Union had a policy or practice of refusing to present such claims to the employer. Indeed, this is a key piece of her evidence under *Goodman v. Lukens Steel Co.,* 482 U.S. 656 (1987), which held that "a union which intentionally avoids asserting discrimination claims, either so as not to antagonize the employer and thus improve its chances of success on other issues, or in deference to the perceived desires of its white membership, is liable under both Title [VII] and §1981..." *Id.* at 669. Young-Smith presented evidence that the Union refused to argue race discrimination with respect to her discharge because it "would upset the company." (Pltf. SJ Exh. A). A jury could reasonably conclude based upon this evidence that the Union had a policy of not filing race based grievances to avoid upsetting the company. However, if such evidence is presented, the Union would, in return, be entitled to a limiting instruction and perhaps, a jury instruction, informing the jury that the evidence is submitted for a limited purpose of establishing the Union's practice related to the filing of race-based grievances and not for the purpose of demonstrating that the Union discriminated in the way it handled the discharge arbitration. Thus, on this issue, the Motion in Limine is DENIED.

## Conclusion

Based on the foregoing, the Defendant's Motion in Limine is GRANTED in part and

DENIED in part, consistent with the discussion above.


Entered: This 23rd day of May, 2012

s/ William C. Lee<br>
United States District Court